JAMES D. FREEMAN
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
999 18th Street, South Terrace Suite 370
Denver, Colorado 80202
Phone: (303) 844-1489
Email: james.freeman2@usdoj.gov

*Attorney for Plaintiff United States of
America*

MARINA V. THOMAS
Assistant Utah Attorney General
SEAN D. REYES
Utah Attorney General
195 North 1950 West P.O. Box 140873
Salt Lake City, Utah 84114-0873
Telephone: (385) 414-0801
marinathomas@agutah.gov

*Attorneys for Plaintiff State of Utah*

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF UTAH, on behalf of the UTAH DEPARTMENT OF ENVIRONMENTAL QUALITY, UTAH DIVISION OF AIR QUALITY,<br><br>Plaintiffs,<br><br>v.<br><br>Ovintiv USA Inc.,<br><br>Defendant. | Case No. 2:24-cv-00723-CMR<br><br>**COMPLAINT** |

Plaintiffs, the United States of America, by authority of the Attorney General of the

United States and acting at the request of the Administrator of the United States Environmental

Protection Agency ("EPA"), and the State of Utah, on behalf of the Utah Department of Environmental Quality ("UDEQ"), Utah Division of Air Quality ("UDAQ"), represented by the Utah Attorney General's Office under Section 19-2-117(3) of the Utah Code, file this Complaint and allege as follows:

## NATURE OF ACTION

1.  This is a civil action against Ovintiv USA Inc. ("Ovintiv") pursuant to Section 113(b) of the Clean Air Act (the "Act"), 42 U.S.C. § 7413(b), and Section 19-2-115 of the Utah Air Conservation Act (the "Utah Act"), Utah Code Ann. § 19-2-115.

2.  Plaintiffs seek civil penalties for violations of Section 111 of the Act, 42 U.S.C. § 7411, and its implementing regulations at 40 C.F.R Part 60, Subparts OOOO and OOOOa; the Utah Act and its implementing regulations at Utah Administrative Code r. R307-101-1 *et seq.*; and approval orders issued pursuant to a permitting program in Utah's federally-approved State Implementation Plan ("SIP"), for unlawful emissions of volatile organic compounds ("VOCs") from certain storage vessels and their associated vapor control systems that are or were part of Ovintiv's oil and natural gas production systems in the Uinta Basin.

3.  Ovintiv's failure to comply with the requirements of the Act and its implementing regulations, approval orders issued pursuant to the Utah SIP, and the Utah Act and its implementing regulations at these facilities resulted in significant excess VOC emissions, a precursor to ground-level ozone. Ovintiv operates in an area where air quality does not meet the National Ambient Air Quality Standards ("NAAQS") for ground-level ozone.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the claims arising under the Clean Air Act pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.

5.      This Court has supplemental jurisdiction over UDAQ's state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this District under Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and 1395(a), because the violations that are the basis of this Complaint occurred in this District, and the facilities at issue are or were operated by Ovintiv in this District.

## NOTICES

7.      EPA and UDAQ issued a Notice of Violation to Ovintiv on July 15, 2020.

8.      Notice of this action has been given to the appropriate air pollution control agency in the State of Utah as required by Section 113(a)(1) of the Act, 42 U.S.C. § 7413(a)(1).

## DEFENDANT

9.      Ovintiv is incorporated in the State of Delaware and at times relevant to this Complaint Ovintiv or its predecessors were doing business within the exterior boundaries of the Uintah and Ouray Indian Reservation and in the State of Utah.

10.     Certain facilities that are the subject of this Complaint were owned and operated by Newfield Production Company prior to February 13, 2019. On February 13, 2019, Encana Corporation acquired Newfield Production Company. In or around January 2020, Ovintiv Inc. was formed through a restructuring of Encana Corporation. In or around January 2020, Ovintiv Inc. merged into Ovintiv Production, Inc. In 2021, Ovintiv Production, Inc. merged into Ovintiv USA Inc. To avoid confusion, this Complaint refers to the actions of Newfield Production Co.,

Encana Corporation, Ovintiv Inc., Ovintiv Production, Inc., and Ovintiv USA Inc. with respect to storage vessel assets that are the subject of this Complaint as those of "Ovintiv" except where noted.

11.     Ovintiv's business in Utah includes the extraction and production of natural gas and oil.

12.     Ovintiv is a "person" as defined in Section 302(e) of the Act, 42 U.S.C. § 7602(e) and Section 19-1-103 of the Utah Code, Utah Code Ann. § 19-1-103(4).

## FACILITIES

13.     Ovintiv is or was the "owner and operator" of the following oil and natural gas production facilities within the meaning of Section 111(a)(5) of the Act, 42 U.S.C. §§ 7411(a)(5) and 7412(a)(9) and Utah Administrative Code r. R307-101-2:

| Facility Name | Latitude | Longitude | UDAQ Site ID |
|---|---|---|---|
| Bar F 1-20-3-2 | 40.2021 | -110.1267 | 14353 |
| Bruce 2-14-3-2 | 40.2287293 | -110.073539 | N/A[a] |
| GMBU 2-36-8-15H | 40.07849241 | -110.17855955 | 15160 |
| Elmer 1-7-3-1WH | 40.24305616 | -110.0316204 | 15737 |
| Keller 13-23-3-3W | 40.20105 | -110.19317 | N/A[b] |
| Larsen 2-29-3-2WH | 40.19791856 | -110.1327785 | N/A[a] |
| Lejeune 1-17-3-2WH | 40.22926494 | -110.1293413 | 15127 |
| McKinnon 14-22-3-3 | 40.20073 | -110.21028 | N/A[b] |
| Morrill 4-23-3-2WH | 40.21460414 | -110.0817902 | N/A[a] |
| Mullins 11-14-3-2W | 40.22175427 | -110.0811949 | 15173 |
| Murray 2-17-3-2 | 40.22872 | -110.1292 | N/A[a] |
| Oats 2-26-3-3 | 40.19964 | -110.18553 | N/A[b] |
| Ranch 16-10-3-3-2WH | 40.228786 | -110.085114 | N/A[b] |
| Thorne 4-21-3-2WH | 40.21399673 | -110.1192859 | N/A[b] |
| Toponotes 13-22-3-3H | 40.201215 | -110.217453 | N/A[b] |
| Ute Tribal 11-10-4-1E | 40.147243 | -109.871071 | 15135 |
| Ute Tribal 13-9-4-1E | 40.14409722 | -109.8949833 | 15358 |
| Ute Tribal 3-10-4-1E | 40.155 | -109.8719 | 15496 |
| Ute Tribal 5-9-4-1E | 40.14977 | -109.89479 | 14867 |
| Ute Tribal 9-9-4-1E | 40.14537 | -109.87993 | 15101 |

a Not applicable – facility registered under the Utah Permit-By-Rule regulations cited in Paragraph 92.
b Not applicable – facility in Indian country, as defined in 18 U.S.C. § 1151 and 40 C.F.R. § 171.2.

14.     These production facilities include wells that produce a mixture of oil, natural gas, and produced water. This mixture flows up the well under pressure to the well head at the surface and then to a device called a three-phase heater treater separator.

15.     The purpose of a separator is to separate the material a well produces into its constituent parts: hydrocarbon liquids, natural gas, and produced water.

16.     After separating them from the natural gas, the separator also temporarily stores the oil and produced water under pressure until the surface of the accumulated liquids rises to a set level, at which point the separator valve opens to allow these liquids to flow into storage vessels kept at or near atmospheric pressure.

17.     Storage vessels are commonly referred to as storage tanks.

18.     Ovintiv operates or, at times relevant to this Complaint, operated storage vessels at each of the production facilities listed in Paragraph 13.

19.     When oil is transferred from a separator to an atmospheric storage vessel, the pressure of the oil drops, and some of the hydrocarbons in the oil, including VOCs, vaporize into a gaseous state in a process commonly known as "flashing." After flashing occurs, the liquids continue to emit vapors due to vapor displacement within the storage vessel resulting from changes in tank temperature and pressure throughout the day and the year. The additional release of gas due to temperature changes occurring while the oil is stored in the storage vessel is known as "breathing" losses. Breathing losses are also known as "standing" losses. Vapors are also emitted due to "working" losses, which refers to emissions during the time period when liquids are being loaded into, or out of, the storage vessel. Flashing, working, and standing losses must be managed to prevent over-pressurization of the storage vessels and the release of uncontrolled emissions into the atmosphere.

5

20.     The tops of the hydrocarbon liquid storage tanks have openings called "thief hatches." Thief hatches are equipped with gaskets that should seal tight when the thief hatch is closed.

21.     Thief hatches serve three primary purposes: (1) they provide access to the contents of the tank for taking samples and measuring the level of the tank (known as "gauging"); (2) they provide a means of relieving pressure from the tank to prevent over-pressurization; and (3) they eliminate excessive vacuum buildup within the tanks.

22.     To prevent over-pressurization of the storage vessels, thief hatches are designed to lift-up (or vent) when the pressure inside the vessel exceeds the pressure setting of the thief hatch. Owners and operators are required to design their facilities to ensure that thief hatches do not release emissions to the atmosphere during normal operations. Emissions due to flashing, working, or standing losses are considered normal operations.

23.     Thief hatches may emit vapors to the atmosphere if the production facility is not properly designed, if the thief hatch gaskets are not maintained, and/or if the thief hatches do not seal properly.

24.     In addition to thief hatches, the storage tanks may also be equipped with pressure relief valves ("PRVs"), which are also designed to vent at set pressures to prevent over-pressurization of the storage vessels. Owners and operators are required to ensure that PRVs do not release emissions to the atmosphere during normal operations.

25.     Thief hatches and PRVs are collectively known as pressure relief devices ("PRDs"). A properly maintained PRD is equipped with a weighted mechanism to ensure that its lid remains properly seated and sealed under normal operating conditions including such times when flashing, breathing/standing, or working losses may be generated.

26.     Vapors from storage vessels are captured and controlled through a series of pipes or vent lines, connections, fittings, and PRDs, collectively called a vapor control system or closed vent system. The vapor control system routes vapors to an emission control device, such as a combustor, or in some circumstances to process by way of a vapor recovery unit.

27.     A properly designed and well-maintained vapor control system ensures that hydrocarbon emissions, including VOCs, are controlled by routing hydrocarbons from the oil storage vessel through a closed vent system to a combustion device where emissions, including VOCs, are burned and destroyed at certain rate efficiencies (e.g., 95%).

28.     An insufficiently designed or poorly maintained or operated vapor control system may result in VOC emissions from the vapor control system being emitted directly to the atmosphere during normal operation. For example, PRDs with seals that are worn, not properly seated, or improperly maintained may result in the vapor control system releasing VOC emissions directly to the atmosphere.

## STATUTORY AND REGULATORY BACKGROUND

29.     As set forth in Section 101(b)(1) of the Act, 42 U.S.C. § 7401(b)(1), the purpose of the Act is to protect and enhance the quality of the nation's air resources so as to promote the public health and welfare and the productive capacity of its population.

30.     As set forth in Section 19-2-101 of the Utah Act, Utah Code Ann. § 19-2-101(2), the purpose of the Utah Act is to:

> achieve and maintain levels of air quality which will protect human health and safety, and to the greatest degree practicable, prevent injury to plant and animal life and property, foster the comfort and convenience of the people, promote the economic and social development of this state, and facilitate the enjoyment of the natural attractions of this state.

## **New Source Performance Standards**

31.     Section 111(b) of the Act, 42 U.S.C. § 7411(b), authorizes EPA to promulgate standards of performance applicable to "new sources" within categories of sources that cause "air pollution which may reasonably be anticipated to endanger public health or welfare." These regulations are referred to as New Source Performance Standards ("NSPS").

32.     A "new source" is any stationary source, the construction or modification of which is commenced after the promulgation of the standards of performance that will apply to such source. 42 U.S.C. § 7411(a)(2).

33.     A "stationary source" is a building, structure, facility, or installation that emits or may emit any air pollutant. *Id*. § 7411(a)(3).

34.     It is unlawful for owners or operators of any new source to operate in violation of applicable NSPS after the standards have gone into effect. *Id*. § 7411(e).

35.     NSPS are legally enforceable in Utah through the federal delegation to the State of Utah. *See* Utah Admin. Code r. R307-101-1; 40 C.F.R. § 60.4(b)(46); 67 Fed. Reg. 58,998 (Sept. 19, 2002); 79 Fed. Reg. 60,993 (Oct. 9, 2014). NSPS have been incorporated by reference into the Utah regulations in Utah Administrative Code implementing the Utah Act. *See* Utah Admin. Code r. R307-210-1.

36.     The NSPS provides that owners and operators submitting information to EPA as required under each Subpart must also submit the required information to the appropriate state agency to which EPA has delegated authority to implement the NSPS. 40 C.F.R. § 60.4(b).

37.     In 1979, EPA listed "Crude Oil and Natural Gas Production" as a source category that contributes significantly to air pollution and for which standards of performance would be established. 44 Fed. Reg. 49,222 (Aug. 21, 1979).

38.     EPA promulgated NSPS applicable to certain onshore "affected facilities" within the Crude Oil and Natural Gas Production source category as Subpart OOOO and Subpart OOOOa to 40 C.F.R. Part 60. Subparts OOOO and OOOOa subcategorize affected facilities by equipment type at 40 C.F.R. §§ 60.5365(a)-(g) and §§ 60.5365a(a)-(j), respectively. Both Subparts include storage vessels among these types of equipment and define "storage vessel," with identical exceptions, as a tank or other vessel that contains an accumulation of crude oil, condensate, intermediate oil, or produced water, and that is constructed primarily of non-earthen materials (such as wood, concrete, steel, fiberglass, or plastic) which provide structural support. 40 C.F.R. §§ 60.5430 and 60.5430(a).

39.     The NSPS Subparts OOOO and OOOOa regulations were incorporated by reference into the Utah Administrative Code and the State of Utah was delegated authority for these subparts. *See* Utah Admin. Code r. R307-210-1. This implementation and enforcement authority is concurrent with federal authority at the facilities located on the lands subject to the State of Utah's regulatory jurisdiction.

### 40 C.F.R. Part 60, Subpart OOOO

40.     In 2012, EPA promulgated NSPS regulations for the crude oil and natural gas production, transmission, and distribution industry sector at 40 C.F.R. Part 60, Subpart OOOO ("NSPS Subpart OOOO"). 40 C.F.R. § 60.5360; 77 Fed. Reg. 49,542 (Aug. 16, 2012).

### Subpart OOOO Applicability

41.     NSPS Subpart OOOO applies to onshore affected facilities for which owners or operators commence construction, modification, or reconstruction after August 23, 2011, and on or before September 18, 2015. 40 C.F.R. § 60.5365. Such affected facilities include each "storage vessel affected facility," which is a single storage vessel, with the potential for VOC

emissions equal to or greater than 6 tons per year ("tpy"), as determined according to 40 C.F.R. § 60.5365(e). 40 C.F.R. § 60.5365(e).

42.     Subpart OOOO defines two groups of storage vessels: (i) those for which construction, modification, or reconstruction commenced after August 23, 2011, and on or before April 12, 2013 ("Group 1 storage vessels"); and (ii) those for which construction, modification, or reconstruction commenced after April 12, 2013 ("Group 2 storage vessels"). *Id*. § 60.5430.

43.     A storage vessel determined an affected facility according to 40 C.F.R. § 60.5365(e) that subsequently has its potential for VOC emissions decrease to less than 6 tpy shall remain an affected facility under Subpart OOOO. *Id*. § 60.5365(e)(2).

**VOC Emissions Control Standards for Storage Vessel Affected Facilities under NSPS Subpart OOOO**

44.     NSPS Subpart OOOO requires "[a]t all times, including periods of startup, shutdown, and malfunction, owners and operators shall maintain and operate any affected facility including associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions." 40 C.F.R. § 60.5370(b).

45.     If an owner or operator uses a control device to reduce emissions from a NSPS OOOO storage vessel affected facility, it must equip the storage vessel with a cover that meets the requirements of 40 C.F.R. § 60.5411(b) and is connected through a closed vent system that meets the requirements of 40 C.F.R. § 60.5411(c), and must route emissions to a control device that meets the conditions specified in 40 C.F.R. § 60.5412(c) and (d). *Id.* § 60.5395(e)(1).

**NSPS Subpart OOOO Cover Requirements**

46.     Owners and operators that use control devices to reduce emissions from an NSPS OOOO storage vessel affected facility must comply with the cover requirements at 40 C.F.R. § 60.5411(b), which specify that:

a. The cover used to satisfy 40 C.F.R. § 60.5395(e)(1), and all openings on such cover, shall form a continuous impermeable barrier over the entire surface area of the liquid in the storage vessel. 40 C.F.R. § 60.5411(b)(1).

b. Each cover opening shall be secured in a closed, sealed position whenever material is in the unit on which the cover is installed except during certain times specified in 40 C.F.R. § 60.5411(b)(2).

c. Each storage vessel thief hatch shall be equipped, maintained, and operated with a weighted mechanism or equivalent, to ensure that the lid remains properly seated. 40 C.F.R. § 60.5411(b)(1). 40 C.F.R. § 60.5411(b)(3).

**NSPS Subpart OOOO Closed Vent System Requirements**

47. Owners and operators that use control devices to reduce emissions from a NSPS OOOO storage vessel affected facility must comply with the closed vent system requirements at 40 C.F.R. § 60.5411(c), which require the owner and/or operator using a closed vent system without a bypass device to:

a. Design the closed vent system to route all gases, vapors, and fumes emitted from the material in the storage vessel to a control device that meets the requirements specified in 40 C.F.R. § 60. 5412(c) and (d), or to a process.

b. Design and operate the closed vent system with no detectable emissions, as determined using olfactory, visual, and auditory ("OVA") inspections. Each closed vent system that routes emissions to a process must be operational 95 percent of the year or greater.

**NSPS Subpart OOOO Control Device Requirements**

48. Subpart OOOO sets forth additional requirements at 40 C.F.R. § 60.5412(d) for control devices used to meet the emission reduction standard in 40 C.F.R. § 60.5395(d). Owners

11

and operators must comply with the following requirements for control devices to reduce emissions from storage vessel affected facilities under NSPS OOOO:

a.  Reduce VOC emissions from storage vessel affected facilities by 95% within 60 days of startup. 40 C.F.R. § 60.5395(d).

b.  Ensure each enclosed combustion device is maintained in a leak-free condition. 40 C.F.R. §§ 60.5412(d)(1)(i), 60.5413(e)(7).

c.  Install and operate a continuous burning pilot flame. 40 C.F.R. §§ 60.5412(d)(1)(ii), 60.5413(e)(2).

d.  Design and operate a flare in accordance with the requirements of 40 C.F.R. § 60.18. 40 C.F.R. §§ 60.5413(a)(1).

e.  Operate the control device with no visible emissions, except for periods not to exceed a total of one minute during any fifteen-minute period, as determined using EPA Method 22, 40 C.F.R. Part 60, Appendix A. 40 C.F.R. §§ 60.5412(d)(1)(iii), 60.5413(e)(3), 60.5417(h)(1)(ii).

f.  Each control device must be operated following the manufacturer's written operating instructions, procedures and maintenance schedule to ensure good air pollution control practices for minimizing emissions. 40 C.F.R. § 60.5417(h)(3).

g.  Operate each control device used to comply with NSPS Subpart OOOOa at all times when gases, vapors, and fumes are vented from storage vessel affected facilities through the closed vent system to the control device. 40 C.F.R. § 60.5412a(d)(4).

## NSPS Subpart OOOO Compliance Demonstration and
## Compliance Reporting Requirements

49.     The owner or operator of a Subpart OOOO affected facility must demonstrate compliance with 40 C.F.R. § 60.5410 during an "initial compliance period" defined at 40 C.F.R. § 60.5410, as beginning on October 15, 2012, or upon initial startup of the affected facility, whichever is later, and ending no later than one year later.

50.     Subpart OOOO sets forth, at 40 C.F.R. § 60.5410(h), the requirements for determining initial compliance with standards for storage vessels. Section 60.5410(h) requires owners and operators of affected storage vessels to determine potential VOC emissions as specified in 40 C.F.R. § 60.5436(e), which provides that the storage vessel potential VOC emissions must be calculated using a generally accepted model or calculation methodology, based on the maximum average daily throughput determined for a 30-day period of production prior to the applicable emission determination deadline. The determination of potential VOC emissions from a storage vessel may take into account requirements under a legally and practically enforceable limit in an operating permit or other requirements under Federal, State, local or tribal authority. 40 C.F.R.§ 60.5365(e).

51.     Subpart OOOO sets forth, at 40 C.F.R. § 60.5420(b), requirements for submittal of an "initial annual report" and submittal of subsequent annual reports on the same date each year, for storage vessel affected facilities. Owners and operators must submit the initial annual report for each affected facility no later than 90 days after the end of the initial compliance period. 40 C.F.R. § 60.5420(b).

52.     After the initial annual report, owners and operators must submit subsequent annual reports to EPA identifying the storage vessel affected facilities constructed, modified, or reconstructed during the reporting period. Annual reports must include documentation of the

VOC emission rate determination and records of deviations in cases where the storage vessel

affected facility was not operated in compliance with the requirements specified in 40 C.F.R.

§§ 60.5395, 60.5411, 60.5412, and 60.5413, as applicable. 40 C.F.R. §§ 60.5420(b)(6),

60.5420(c)(5)(iii).

53.   Each annual report for Group 1 storage vessels must include:

   a.   Documentation of the VOC emission rate determination. *Id.* § 60.5420(b)(6)(ii).

   b.   Records of deviations in cases where the storage vessel was not operated in

        compliance with the Subpart OOOO requirements at 40 C.F.R. §§ 60.5395,

        60.5411, 60.5412, and/or 60.5413, which the operator must maintain pursuant to

        40 C.F.R. § 60.5420(c)(5)(iii). *Id.* § 60.5420(b)(6)(iii).

   c.   Identification of each Group 1 storage vessel affected facility. *Id.*.

        § 60.5420(b)(iv).

54.   Each annual report for Group 2 storage vessels must include the documentation of

emission rate determination and deviation records required under § 60.5420(b)(6)(ii) and

§ 60.5420(b)(6)(iii), respectively.

**40 C.F.R. Part 60, Subpart OOOOa**

55.   In 2016, EPA amended the NSPS to update standards for oil and gas production

facilities at 40 C.F.R. Part 60, Subpart OOOOa ("NSPS Subpart OOOOa"). 40 C.F.R.

§ 60.5360a; 81 Fed. Reg. 35,898 (June 3, 2016).

**Subpart OOOOa Applicability**

56.   NSPS Subpart OOOOa applies to affected facilities for which owners or operators

commence construction, modification, or reconstruction after September 18, 2015. 40 C.F.R.

§ 60.5365a. Such affected facilities include each "storage vessel affected facility," which in turn

includes any single storage vessel that commenced construction, reconstruction, or modification

after September 18, 2015 and on or before November 16, 2020 with the potential for VOC

emissions equal to or greater than 6 tpy as determined according to 40 C.F.R. § 60.5365a(e)(1).

*Id*. § 60.5365a(e)(1).

57.     A storage vessel affected facility that subsequently has its potential for VOC

emissions decrease to less than 6 tpy shall remain an affected facility under Subpart OOOOa. *Id.*

§ 60.5365a(e)(4).

### VOC Emissions Control Standards for Storage Vessel Affected Facilities under NSPS Subpart OOOOa

58.     Subpart OOOOa sets forth VOC emission standards for storage vessel affected

facilities. 40 C.F.R. § 60.5395a.

59.     NSPS Subpart OOOOa requires "[a]t all times, including periods of startup,

shutdown, and malfunction, owners and operators shall maintain and operate any affected facility

including associated air pollution control equipment in a manner consistent with good air

pollution control practice for minimizing emissions." *Id.* § 60.5370a(b).

60.     If the owner or operator of a storage vessel affected facility uses a control device

to reduce VOC emissions from a storage vessel affected facility, it must equip the storage vessel

with a cover that meets the requirements of 40 C.F.R. § 60.5411a(b) and is connected through a

closed vent system that meets the requirements of 40 C.F.R. § 60.5411a(c) and (d) and must

route emissions to a control device that meets the conditions specified in 40 C.F.R. § 60.5412a(c)

or (d). *Id.* § 60.5395a(b)(1).

### NSPS Subpart OOOOa Cover Requirements

61.     Owners and operators that use control devices to reduce emissions from a NSPS

OOOOa storage vessel affected facility must comply with the cover requirements at 40 C.F.R.

§ 60.5411a(b), which specify that:

a. The cover and all openings on the cover (e.g., access hatches and pressure relief valves) shall form a continuous impermeable barrier over the entire surface area of the liquid in the storage vessel. 40 C.F.R. § 60.5411a(b)(1).

b. Each cover opening must be secured in a closed, sealed position whenever material is in the unit, except during those times specified in 40 C.F.R. § 60.5411a(b)(2)(i)–(iv). *Id.* § 60.5411a(b)(2).

c. Each storage vessel thief hatch must be equipped, maintained, and operated with a weighted mechanism or equivalent, to ensure that the lid remains properly seated and sealed under normal operating conditions, including such times when working, standing/breathing, and flash emissions may be generated. *Id.* § 60.5411a(b)(3).

### NSPS Subpart OOOOa Closed Vent System Requirements

62.     Owners and operators that use control devices to reduce emissions from an NSPS OOOOa storage vessel affected facility must comply with the closed vent system requirements at 40 C.F.R. § 60.5411a(c), which require the owner and/or operator using a closed vent system without a bypass device to:

a. Design the closed vent system to route all gases, vapors, and fumes emitted from the material in the storage vessel to a control device that meets the requirements specified in 40 C.F.R. § 60.5412a(c) and (d), or to a process. 40 C.F.R. § 60.5411a(c)(1).

b. Design and operate a closed vent system with no detectable emissions, as determined using olfactory, visual, and auditory ("OVA") inspections. *Id.* § 60.5411a(c)(2).

63.     Such owners and operators must also conduct an assessment that the closed vent system is of sufficient design and capacity to ensure that all emissions from the affected facility are routed to the control device and that the control device is of sufficient design and capacity to accommodate all emissions from the affected facility and have it certified by a qualified professional engineer or an in-house engineer with expertise on the design and operation of the closed vent system in accordance with 40 C.F.R. § 60.5411a(d)(1)(i) and (ii).

### NSPS Subpart OOOOa Control Device Requirements

64.     NSPS Subpart OOOOa requires owners and operators using control devices to reduce emissions from storage vessel affected facilities to:

a.   Reduce VOC emissions from storage vessel affected facilities by 95% within 60 days of startup. 40 C.F.R. § 60.5395a(a)(2).

b.   Ensure each enclosed combustion device is maintained in a leak-free condition. 40 C.F.R. §§ 60.5412a(d)(1)(i) or 60.5413a(e)(7) (as applicable).

c.   Install and operate a continuous burning pilot flame. 40 C.F.R. §§ 60.5412a(d)(1)(ii) or 60.5413a(e)(2) (as applicable).

d.   Design and operate each flare in accordance with the requirements of 40 C.F.R. § 60.18. 40 C.F.R. §§ 60.5412a(d)(3), 60.5425a.

e.   Operate the control device with no visible emissions, except for periods not to exceed a total of one minute during any fifteen-minute period, as determined using EPA Method 22, 40 C.F.R. Part 60, Appendix A. 40 C.F.R. §§ 60.5417a(h)(1)(ii) and 60.5412a(d)(1)(iii) or 60.5413a(e)(3) (as applicable).

f.   Operate each control device used to comply with NSPS Subpart OOOOa at all times when gases, vapors, and fumes are vented from storage vessel affected

17

facilities through the closed vent system to the control device.

40 C.F.R. § 60.5412a(d)(4).

### NSPS Subpart OOOOa Compliance Demonstration and Compliance Reporting Requirements

65.     The owner or operator of a Subpart OOOOa affected facility must demonstrate

compliance with 40 C.F.R. § 60.5410a during an "initial compliance period" defined at 40

C.F.R. § 60.5410a, as beginning on August 2, 2016 or upon initial startup, whichever is later, and

ending no later than one year later, except as provided elsewhere under 40 C.F.R. § 60.5410a.

66.     Subpart OOOO sets forth at 40 C.F.R. § 60.5410a(h) the requirements for

determining initial compliance with standards for storage vessels. Section 60.5410(h) requires

owners and operators of affected storage vessels to determine potential VOC emissions as

specified in 40 C.F.R. § 60.5436a(e), which provides that the storage vessel potential VOC

emissions must be calculated using a generally accepted model or calculation methodology,

based on the maximum average daily throughput determined for a 30-day period of production

prior to the applicable emission determination deadline. The determination of potential VOC

emissions from a storage vessel may take into account requirements under a legally and

practically enforceable limit in an operating permit or other requirements under Federal, State,

local, or tribal authority. 40 C.F.R.§ 60.5365a(e).

67.     Within 90 days after the end of the initial compliance period, owners and

operators must submit the initial annual report. 40 C.F.R. §§ 60.5410a(h)(5), 60.5420a(b)(1)

and (6). Subsequent annual reports are due to EPA no later than the same date each year as the

initial annual report. *Id.* § 60.5420a(b).

68.     All annual reports for Subpart OOOO storage vessel affected facilities must

contain the information specified in 40 C.F.R. § 60.5420a(b)(1) and (6), including the

identification and location of each storage vessel affected facility constructed, modified, or reconstructed during the reporting period, documentation of the VOC emission rate determination, records of deviations in cases where the storage vessel affected facility was not operated in compliance with the requirements specified in 40 C.F.R. §§ 60.5395a, 60.5411a, 60.5412a, and 60.5413a, as applicable, and a statement indicating requirements specified in 40 C.F.R. § 60.5410a(h)(2) and (3) have been met. *Id.* § 60.5420a(b)(6)(i), (ii), (iii), and (iv).

## National Ambient Air Quality Standards for Ozone

69.    Section 108 of the Act, 42 U.S.C. § 7408, directs EPA to identify air pollutants that "may reasonably be anticipated to endanger public health or welfare" and to issue air quality criteria for those pollutants based on "the latest scientific knowledge" about their effects on public health and the environment. These pollutants are known as "criteria pollutants."

70.    Section 109 of the Act, 42 U.S.C. § 7409, requires EPA to establish National Ambient Air Quality Standards ("NAAQS") for criteria pollutants. The primary standard must be set at the level "requisite to protect the public health" with an adequate margin of safety, and the secondary standard is intended to protect "the public welfare." According to Section 302(h) of the Act, 42 U.S.C. § 7602(h), public welfare effects are "effects on soils, water, crops, vegetation" and other environmental impacts including, but not limited to, effects on animals, wildlife, property, and "effects on economic values."

71.    Ground-level ozone, commonly known as "smog," is one of six criteria pollutants for which EPA has promulgated national standards, due to its adverse effects on human health and the environment. Short-term exposures (1 to 3 hours) to ground-level ozone can cause acute health effects observed even at low concentrations, including temporary pulmonary inflammation. Long-term exposure (months to years) may cause permanent damage to lung

tissue. Children and adults who are active outdoors are particularly susceptible to the adverse effects of exposure to ozone. *See* 73 Fed. Reg. 16,436 (Mar. 27, 2008).

72.    Ozone is not emitted directly from sources of air pollution. Ozone is a photochemical oxidant, formed when certain chemicals react with oxygen in the presence of sunlight. These chemicals—VOC and nitrogen oxides ("NOx")—are called "ozone precursors." Sources that emit ozone precursors are regulated to reduce ground-level ozone. *See* 62 Fed. Reg. 38,856 (July 18, 1997).

73.    In 2015, EPA lowered the primary and secondary NAAQS for ozone to 0.070 ppm (measured as an 8-hour average). 80 Fed. Reg. 65,292 (Oct. 26, 2015).

74.    Effective August 2018, EPA designated parts of the Uinta Basin in Utah as a marginal nonattainment area with respect to the 2015 NAAQS for 8-hour ozone. 83 Fed. Reg. 25,776, 25,837 (June 4, 2018).

## Utah State Implementation Plan

75.    Pursuant to Section 107(a) of the Act, 42 U.S.C. § 7407(a), states are primarily responsible for ensuring the attainment and maintenance of the NAAQS. States implement the NAAQS on a region-by-region basis, within air quality control regions (or "areas") throughout the state. An area with ambient air concentrations that meets the NAAQS for a particular pollutant is an "attainment" area. An area with ambient air concentrations that exceed the NAAQS is a "nonattainment" area. And an area that cannot be classified due to insufficient data is "unclassifiable."

76.    Pursuant to Section 110(a) of the Act, 42 U.S.C. § 7410(a), each state must adopt and submit to EPA for approval a plan that provides for the implementation, maintenance, and enforcement of the NAAQS for each criteria pollutant in each air quality control region within the state. This plan is known as a state implementation plan or "SIP." Section 110(a)(2)(A) of the

Act, 42 U.S.C. § 7410(a)(2)(A), requires that each SIP include enforceable emissions limitations and other "control measures, means, or techniques" to ensure attainment of the NAAQS.

77.     Pursuant to Section 110(c)(3) of the Act, 42 U.S.C. § 7410(c)(3), after enforceable state emission limitations are approved by EPA, these SIP provisions are federally enforceable under Sections 113(a) and (b) of the Act, 42 U.S.C. § 7413(a) and (b). *See* 40 C.F.R § 52.23.

78.     As required by Section 110(a) of the Act, 42 U.S.C. § 7410(a), the State of Utah has periodically adopted regulations to provide for the implementation, maintenance, and enforcement of the ozone NAAQS.

### Approval Orders Issued Through Utah's SIP-Approved Permitting Process

79.     The State of Utah requires all potential sources of air pollution, unless exempt by its regulations, to submit a notice of intent and obtain an Approval Order ("AO") prior to construction, modification, or relocation. *See* Utah Admin. Code r. R307-401.

80.     EPA approved the State of Utah's permitting program at Utah Administrative Code r. R307-401 into Utah's SIP minor new source review program. *See* 79 Fed. Reg. 7,072 (Feb. 6, 2014). Requirements in AOs are therefore federally enforceable. *See* 40 C.F.R § 52.23.

81.     UDAQ issued AOs to Ovintiv for several oil and natural gas production facilities in the Uinta Basin in Utah. Relevant AO numbers are listed in the table below and were in effect at all times pertinent to this Complaint.

| Facility Name | AO Number |
|---|---|
| Bar F 1-20-3-2 | DAQE-AN143530002-17 |
| Elmer 1-7-3-1WH | DAQE-AN157370002-17 |
| GMBU 2-36-8-15H | DAQE-AN15160002-16 |
| Lejeune 1-17-3-2WH | DAQE-AN151270002-17 |

| Mullins 11-14-3-2W | DAQE-AN151730002-15 |
| Ranch 16-10-3-3-2WH | DAQE-AN151230002-15 |
| Ute Tribal 11-10-4-1E | DAQEAN151350001-16 |
| Ute Tribal 13-9-4-1E | DAQEAN153580002-15 |
| Ute Tribal 3-10-4-1E | DAQEAN154960001-16 |
| Ute Tribal 5-9-4-1E | DAQEAN148670001-14 |
| Ute Tribal 9-9-4-1E | DAQEAN151010001-15 |

82.     Condition I.5 of the AOs issued for the Bar F 1-20-3-2, Elmer 1-7-3-1WH, GMBU 2-36-8-15H, Lejeune 1-17-3-2WH, Mullins 11-14-3-2W, Ranch 16-10-3-3-2WH, Ute Tribal 11-10-4-1E, Ute Tribal 13-9-4-1E, Ute Tribal 3-10-4-1E, Ute Tribal 5-9-4-1E, and Ute Tribal 9-9-4-1E facilities requires the owners/operators of oil and natural gas production facilities, at all times, including startup, shutdown, and malfunction to the extent practicable, to operate equipment approved under an AO, including associated air pollution control equipment, in a manner consistent with good air pollution control practice for minimizing emissions.

83.     Condition II.B.2.c of the AOs issued for the Lejeune 1-17-3-2WH, Mullins 11-14-3-2W, Ranch 16-10-3-3-2WH, Ute Tribal 13-9-4-1E, and Ute Tribal 5-9-4-1E facilities require owners or operators of oil and natural gas production facilities to keep storage tank thief hatches closed and latched except during tank unloading or other maintenance activities.

84.     Conditions II.B.2.c or II.B.4.c of the AOs issued for the Bar F 1-20-3-2 and Elmer 1-7-3-1WH facilities require an owner or operator to keep storage tank thief hatches and other tank openings closed and sealed except during tank unloading or other maintenance activities.

85.     Conditions II.B.2.b., II.B.3.a, or II.B.4.b of the AOs issued for the Bar F 1-20-3-2, Elmer 1-7-3-1WH, Lejeune 1-17-3-2WH, Mullins 11-14-3-2W, Ranch 16-10-3-3-2WH, Ute Tribal 11-10-4-1E, Ute Tribal 13-9-4-1E, and Ute Tribal 9-9-4-1E facilities require an owner or operator to route all gases, vapors, and fumes from oil storage tanks and produced water storage

tanks to an operating combustor at all times after production startup. Conditions II.B.2.b and II.B.2.b.1 of the AO issued for the Elmer 1-7-3-1WH facility require each combustor to operate with no visible emissions, as determined according to EPA Method 22. State of Utah Air Quality Regulations for the Oil & Gas Industry

86.     Effective December 2014, under Utah air regulations implementing the Utah Act, all oil and natural gas exploration, production, and transmission operations, and all well production facilities, must comply with general provisions for prevention of emissions and use of good air pollution control practices. *See* Utah Admin. Code r. R307-501.

87.     "Well production facilities" include "all equipment at a single stationary source directly associated with one or more oil wells or gas wells. This equipment includes, but is not limited to, equipment used for production, extraction, recovery, lifting, stabilization, storage, separation, treating, dehydration, combustion, compression, pumping, metering, monitoring, and flowline." *Id*. r. R307-501-2(2).

88.     Utah's general provisions for the oil and gas industry in the Utah air regulations implementing the Utah Act require the following:

     a.   "All crude oil, condensate, and intermediate hydrocarbon liquids collection, storage, processing and handling operations, regardless of size, shall be designed, operated and maintained so as to minimize emission of volatile organic compounds to the atmosphere to the extent reasonably practicable." *Id*. r. R307-501-4(1)(a).

     b.   "At all times, including periods of start-up, shutdown, and malfunction, the installation and air pollution control equipment shall be maintained and

operated in a manner consistent with good air pollution control practices for minimizing emissions." *Id*. r. R307-501-4(1)(b).

    c.   "All air pollution control equipment shall be operated and maintained pursuant to the manufacturing specifications or equivalent to the extent practicable and consistent with technological limitations and good engineering and maintenance practices." *Id*. r. R307-501-4(2)(a).

89.    "Installation" means a "discrete process with identifiable emissions which may be part of a larger industrial plant. Pollution equipment shall not be considered a separate installation or installations." *Id*. r. R307-101-2.

90.    The provisions in Utah Air Quality Regulations for Oil and Gas Industry referenced in Paragraphs 86-89 are enforceable only by the State of Utah.

### State of Utah Permit-by-Rule (Utah PBR) Regulations

91.    Effective March 5, 2018, well sites as defined by NSPS OOOOa, including "centralized tank batteries," are not required to obtain AOs under Utah regulations if they are not major sources as defined by R307-101-2 of the Utah Administrative Code and if they are registered with the UDAQ as required by R307-505 of the Utah Administrative Code. *See* Utah Admin. Code r. R307-401-10(5).

92.    A "well site" means "one or more surface sites that are constructed for the drilling and subsequent operation of any oil well, natural gas well, or injection well." *Id.* (citing 40 C.F.R. § 60.5430a).

93.    A "centralized tank battery" means a "separate tank battery surface site collecting crude oil, condensate, intermediate hydrocarbon liquids, or produced water from wells not located at the well site." Utah Admin. Code r. R307-506-2.

94.     Owners or operators registering with the UDAQ under R307-505 of the Utah Administrative Code must, among other things, certify that the registered facility is in compliance with Utah Administrative Code R307-506 through R307-510. *See id*. r. R307-505-3(4). These regulations are referred to collectively as a "permit-by-rule" or "Utah PBR."

95.     Thief hatches on storage vessels subject to Utah Administrative Code R307-506 "shall be kept closed and latched except during vessel unloading or other maintenance activities." *Id*. r. R307-506-4(1).

96.     VOC emissions from storage vessels in operation as of January 1, 2018, with a site-wide throughput of 8,000 barrels or greater of crude oil or 2,000 barrels or greater of condensate per year on a rolling 12-month basis must be routed to a process unit where the emissions are recycled, incorporated into a product or recovered, or be routed to a VOC control device that is in compliance with R307-508 of the Utah Administrative Code. Storage vessels with combined, uncontrolled VOC emissions demonstrated to be less than 4 tons per year on a rolling 12-month basis are exempt from this requirement. *Id*. r. R307-506-4(2).

97.     The provisions of Utah PBR are enforceable only by the State of Utah.

## GENERAL ALLEGATIONS

98.     From at least May 2018 until the present, Ovintiv USA, Inc. or its predecessors Newfield Production Co., Encana Corporation, Ovintiv, Inc., and Ovintiv Production, Inc., owned and operated the oil and natural gas production facilities listed in Paragraph 13. Ovintiv operates or, at times relevant to this Complaint, operated storage vessels at each of the facilities listed in Paragraph 13.

99.     Based on information Ovintiv reported in its annual NSPS OOOO reports, the Elmer 1-7-3-1WH, Larsen 2-29-3-2WH, Morrill 4-23-3-2WH, Ranch 16-10-3-3-2WH, and

Thorne 4-21-3-2WH storage vessels are subject to the requirements for storage vessel affected facilities in NSPS OOOO.

100.    Based on well production data reported to the Utah Division of Oil, Gas and Mining, the GMBU 2-36-8-15H, Lejeune 1-17-3-2WH, Mullins 11-14-3-2W, Ute Tribal 13-9-4-1E, Ute Tribal 5-9-4-1E, and Ute Tribal 9-9-4-1E storage vessels are subject to the requirements for storage vessel affected facilities in NSPS OOOO.

101.    Ovintiv commenced production at the facilities identified in Paragraphs 99 and 100 on or around the dates identified in the following table, along with the corresponding initial compliance period end dates and initial report submittal deadlines:

| Facility Name | Production Start Date | Initial Compliance Period End Date | Initial Report Submittal Deadline |
|---|---|---|---|
| Elmer 1-7-3-1WH | 10/15/2012 | 10/15/2013 | 1/13/2014 |
| GMBU 2-36-8-15H | 7/30/2012 | 7/30/2013 | 10/28/2012 |
| Larsen 2-29-3-2WH | 7/31/2012 | 7/31/2013 | 10/29/2012 |
| Lejeune 1-17-3-2WH | 8/22/2013 | 8/22/2014 | 11/20/2014 |
| Morrill 4-23-3-2WH | 11/20/2012 | 11/20/2013 | 2/18/2013 |
| Mullins 11-14-3-2W | 5/26/2012 | 5/26/2013 | 8/24/2013 |
| Ranch 16-10-3-3-2WH | 7/25/2014 | 7/25/2015 | 10/23/2016 |
| Thorne 4-21-3-2WH | 3/20/2012 | 3/20/2013 | 6/18/2013 |
| Ute Tribal 13-9-4-1E | 4/28/2014 | 4/28/2015 | 7/27/2014 |
| Ute Tribal 5-9-4-1E | 4/22/2014 | 4/22/2015 | 7/21/2014 |
| Ute Tribal 9-9-4-1E | 9/21/2012 | 9/21/2013 | 12/20/2013 |

102.    Ovintiv has not submitted the initial or annual reports required by 40 C.F.R. § 60.5420(b) for the GMBU 2-36-8-15H, Lejeune 1-17-3-2WH, Mullins 11-14-3-2W, Ute Tribal 13-9-4-1E, Ute Tribal 5-9-4-1E, and Ute Tribal 9-9-4-1E storage vessel affected facilities.

103.    Based on information reported by Ovintiv in its annual NSPS OOOOa reports, the Murray 2-17-3-2, Keller 13-23-3-3W, McKinnon 14-22-3-3, Oats 2-26-3-3, Thorne 4-21-3-2WH, and Toponotes 13-22-3-3H storage vessels are subject to the requirements for storage vessel affected facilities in NSPS OOOOa.

104.    Based on well production data reported to the Utah Division of Oil, Gas and Mining, the Bar F 1-20-3-2 storage vessel is subject to the requirements for storage vessel affected facilities in NSPS OOOOa.

105.    Ovintiv commenced production at the Bar F 1-20-3-2 facility on or around December 30, 2017, and a corresponding initial report deadline of March 26, 2019, and the Murray 2-17-3-2 facility had a production start date on or around March 28, 2017, and a corresponding initial report deadline of June 26, 2018.

106.    Ovintiv has not submitted the initial or annual reports required by 40 C.F.R. § 60.5420a(b) for the Bar F 1-20-3-2 or Murray 2-17-3-2 storage vessel affected facilities.

107.    In accordance with 40 C.F.R. § 60.5395a(b)(1), the storage vessels referred to in Paragraphs 103 and 104 are subject to the requirements for storage vessel covers at 40 C.F.R. § 60.5411a(b), and the requirements for storage vessel closed vent systems at 40 C.F.R § 60.5411a(c), because Ovintiv routed the oil and produced water storage vessel emissions to a control device to comply with the emissions reduction requirements of 40 C.F.R. § 60.5395a(a)(2).

108.    The following facilities are considered well production facilities, as defined in Utah Administrative Code R307-501-2(2), and are subject to state regulations in Utah Administrative Code R307-501-1 through R307-501-4: Bar F 1-20-3-2, Bruce 2-14-3-2, Elmer 1-7-3-1WH, GMBU 2-36-8-15H, Larsen 2-29-3-2WH, Lejeune 1-17-3-2WH, Morrill 4-23-3-

2WH, Mullins 11-14-3-2W, Murray 2-17 3-2, Ranch 16-10-3-3-2WH, Ute Tribal 11-10-4-1E, Ute Tribal 13-9-4-1E, Ute Tribal 3-10-4-1E, Ute Tribal 5-9-4-1E, and Ute Tribal 9-9-4-1E.

109.    Ovintiv's Morrill 4-23-3-2WH, Murray 2-17 3-2, Bruce 2-14-3-2, and Larsen 2-29-3-2WH facilities are registered under Utah PBR and are subject to the requirements in Utah Administrative Code R307-506 through R307-510.

110.    According to information submitted in the registration and production data reported to the UDOGM for Ovintiv's Murray 2-17-3-2 facility, the site-wide throughput for this facility is greater than or equal to 8,000 barrels of crude oil per year on a rolling 12-month basis; therefore, the storage vessels at Murray 2-17 3-2 are subject to the VOC emissions control requirements in Utah Administrative Code R307-506-4(2)(a).

111.    According to information submitted in the registration, Ovintiv's Bruce 2-14-3-2 facility began operations on April 4, 2019; therefore, under Utah Administrative Code R307-506-4(3), the storage vessels at Bruce 2-14-3-2 are required to control VOC emissions under Utah Administrative Code R307-506-4(2)(a) upon startup of operation for a minimum of one year. The control device at Bruce 2-14 3-2 is subject to the requirements for VOC control devices in Utah Administrative Code R307-508-1 through R307-508-4.

### Facility Inspections

112.    In 2018 and 2019, EPA conducted inspections of storage vessels at the Ovintiv oil and natural gas production facilities identified in Paragraph 13 on the dates and with the governmental entity (the Utah Division of Air Quality ("UDAQ") and/or the Ute Indian Tribal Air Program ("UITAP")) indicated on the table below:

| Facility Name | Inspection Date(s) | Inspecting Entities |
|---|---|---|
| Bar F 1-20-3-2 | July 29 and 31, 2018 | EPA and UDAQ |
| Bruce 2-14-3-2 | May 21 and 23, 2019 | EPA and UDAQ |

| GMBU 2-36-8-15H | August 7, 2018 | EPA and UDAQ |
| Elmer 1-7-3-1WH | July 29 and 31, 2018 | EPA and UDAQ |
| Keller 13-23-3-3W | June 25, 2018 | EPA and UITAP |
| Larsen 2-29-3-2WH | July 29 and 31, 2018 | EPA and UDAQ |
| Lejeune 1-17-3-2WH | July 29 and 31, 2018<br>August 14 – 15, 2019 | EPA and UDAQ |
| McKinnon 14-22-3-3 | June 25, 2018 | EPA and UITAP |
| Morrill 4-23-3-2WH | July 29 and 31, 2018 | EPA and UDAQ |
| Mullins 11-14-3-2W | July 29 and 31, 2018 | EPA and UDAQ |
| Murphy 2-31-3-2W | July 29 and 31, 2018 | EPA and UDAQ |
| Murray 2-17-3-2 | August 14 – 15, 2019 | EPA and UDAQ |
| Oats 2-26-3-3 | June 25, 2018 | EPA and UITAP |
| Ranch 16-10-3-3-2WH | May 21 and 23, 2019 | EPA and UDAQ |
| State 2-36-8-15 | August 7, 2018 | EPA and UDAQ |
| Thorne 4-21-3-2WH | July 29 and 31, 2018 | EPA and UITAP |
| Toponotes 13-22-3-3H | June 25, 2018 | EPA and UITAP |
| Ute Tribal 11-10-4-1E | May 21 and 23, 2019<br>August 14 – 15, 2019 | EPA and UDAQ |
| Ute Tribal 13-9-4-1E | August 14 – 15, 2019 | EPA and UDAQ |
| Ute Tribal 3-10-4-1E | August 14 – 15, 2019 | EPA and UDAQ |
| Ute Tribal 5-9-4-1E | August 14 – 15, 2019 | EPA and UDAQ |
| Ute Tribal 9-9-4-1E | August 14 – 15, 2019 | EPA and UDAQ |

113.    The inspections included OVA observations and observations via infrared camera optical gas-imaging.

114.    During the June 25, 2018, inspection, EPA observed the Keller 13-23-3-3W, McKinnon 14-22-3-3, and Oats 2-26-3-3 storage vessels emitting vapors directly to the atmosphere.

29

115.    During the June 25, 2018 inspection, EPA observed that the Oats 2-26-3-3 storage vessel emissions control device, an enclosed combustor, was not operating while gas flowed through the combustor.

116.    Information Ovintiv provided to EPA after the inspection indicates that the Oats 2-26-3-3 combustor was not operating for portions of the day from at least June 25, 2018 through July 5, 2018.

117.    During the June 25, 2018 inspection, EPA observed nearly continuous visible emissions (black smoke) from the storage vessel emissions combustors at the Keller 13-23-3-3W and McKinnon 14-22-3-3 facilities. While performing a visible emissions test according to EPA Method 22, EPA inspectors observed visible emissions from the combustors in excess of one minute in a fifteen-minute period.

118.    During the June 25, 2018 inspection, EPA inspectors observed intermittent visible emissions (black smoke) from the storage vessel emissions combustor at Toponotes 13-22-3-3H.

119.    During the July 29, July 31, and August 7, 2018 inspections, EPA observed the Elmer 1-7-3-1WH, Lejeune 1-17-3-2WH, Bar F 1-20-3-2,5 Mullins 11-14-3-2W, and Thorne 4-21-3-2WH storage vessels emitting vapors directly to the atmosphere.

120.    During the July 31, 2018 inspection, EPA inspectors observed visible emissions (black smoke) from storage vessel emissions control devices, flares, at the Elmer 1-7-3-1WH and Thorne 4-21-3-2WH facilities. EPA inspectors performed visible emissions tests according to EPA Method 22 and observed visible emissions from each flare in excess of one minute in a fifteen-minute period.

121.    During the August 7, 2018 inspection, using an infrared camera, EPA inspectors observed emissions from the separator stack and from a storage vessel heater at the GMBU 2-36-8-15H facility.

122.    During the May 21 and May 23, 2019 inspections, EPA and UDAQ observed Bruce 2-14-3-2 and Ranch 16-10-3-3-2WH storage vessels emitting vapor directly to the atmosphere.

123.    During the May 21, 2019 inspection, EPA and UDAQ inspectors observed visible emissions (black smoke) from a storage vessel emissions control device, here a flare, at the Bruce 2-14-3-2 facility. Performing a visible emissions test according to EPA Method 22, EPA inspectors observed visible emissions from the flare in excess of one minute in a fifteen-minute period.

124.    During the May 23, 2019 inspection, EPA and UDAQ inspectors observed the absence of a pilot flame at a Ute Tribal 11-10-4-1E storage vessel emissions control device, here a combustor, indicating that the combustor was not operating.

125.    During the August 14-15, 2019 inspections, EPA and UDAQ observed the Lejeune 1-17-3-2WH, Murray 2-17-3-2, Ute Tribal 13-9- 4-1E, and Ute Tribal 5-9-4-1E storage vessels emitting vapor directly to the atmosphere.

126.    During the August 15, 2019 inspection, EPA and UDAQ inspectors observed the absence of a pilot flame at the Ute Tribal 11-10-4-1E and Ute Tribal 9-9-4-1E combustors, indicating that the combustors were not operating.

127.    During the August 15, 2019 inspection at Ute Tribal 3-10-4-1E and Ute Tribal 5-9-4-1E storage vessel affected facilities, EPA inspectors also used an infrared camera to assess whether the combustor was emitting heat and in so doing did not observe the combustor emitting

thermal energy (i.e., a "heat signature"). Such a lack of a heat signature indicated the combustors were not operating.

## CLAIMS FOR RELIEF

### Claim 1

### Violations of NSPS Subpart OOOO on Utah State Lands

128.    Paragraphs 1 through 127 are incorporated herein by reference.

129.    Paragraphs 128 through 139 are alleged jointly by the United States and the State of Utah.

130.    The Elmer 1-7-3-1WH, GMBU 2-36-8-15H, Larsen 2-29-3-2WH, Lejeune 1-17-3-2WH, Morrill 4-23-3-2WH, Mullins 11-14-3-2W, Ranch 16-10-3-3-2WH, Thorne 4-21-3-2WH, Ute Tribal 13-9-4-1E, Ute Tribal 5- 9-4-1E, and Ute Tribal 9-9-4-1E Subpart OOOO storage vessel affected facilities are located on Utah State lands.

131.    From the initial report deadline listed in Paragraph 101 above until Ovintiv takes corrective action, Ovintiv has operated and on information and belief continues to operate the Keller 13-23-3-3W, McKinnon 14-22-3-3, Murray 2-17-3-2, Oats 2-26-3-3, Thorne 4-21-3-2WH, and Toponotes 13-22-3-3H facilities in violation of 40 C.F.R. § 60.5420(b) by failing to submit initial or annual reports containing the required information for storage vessel affected facilities.

132.    From at least the inspection dates identified in Paragraph 112 until Ovintiv takes corrective action, Ovintiv has operated and on information and belief continues to operate the Elmer 1-7-3-1WH and Ranch 16-10-3-3-2WH storage vessel affected facilities in violation of the storage vessel cover requirements of 40 C.F.R. § 60.5411(b) by failing to ensure the covers and all openings on the covers (e.g., access hatches and pressure relief valves) form a continuous impermeable barrier over the entire surface area of the liquid in the storage vessel, as required by

40 C.F.R. § 60.5411(b)(1), failing to secure the storage vessel cover openings in a closed, sealed

position, as required by 40 C.F.R. § 60.5411(b)(2), or failing to maintain and operate the storage

vessel thief hatches to ensure the lids remain properly seated, as required by 40 C.F.R. §

60.5411(b)(3).

133.    From at least the inspection dates identified in Paragraph 112 until Ovintiv takes

corrective action, Ovintiv has operated and on information and belief continues to operate the

Elmer 1-7-3-1WH and Ranch 16-10-3-3-2WH in violation of the storage vessel closed vent

system requirements of 40 C.F.R. § 60.5411(c) by failing to design the closed vent systems to

route all gases, vapors, and fumes emitted from the material in the storage vessels to a control

device that meets the requirements specified in § 60.5412(d), or to a process, as required by

40 C.F.R. § 60.5411(c)(1), and failing to design and operate the closed vent systems with no

detectable emissions as determined using OVA inspections, as required by 40 C.F.R.

§ 60.5411(c)(2).

134.    From at least the inspection dates identified in Paragraph 112 until Ovintiv takes

corrective action, Ovintiv has operated and on information and belief continues to operate the

Hewett 2-6C4, Marquez 2-17C4, and SLB 1-35A1 facilities in violation of 40 C.F.R.

§ 60.5395(e)(1) by failing to comply with the affected storage vessel facility cover requirements

at 40 C.F.R. § 60.5411(b) and closed vent system requirements of 40 C.F.R. § 60.5411(c).

135.    From at least the inspection dates identified in Paragraph 112 until Ovintiv takes

corrective action, Ovintiv has operated and on information and belief continues to operate the

Elmer 1-7-3-1WH storage vessel affected facility in violation of 40 C.F.R. §§ 60.5412(d)(1)(iii),

or 60.5413(e)(3), and 60.5417(h)(1)(ii) by failing to operate the associated control device with no

visible emissions, except for periods not to exceed a total of one minute during any fifteen-

minute period, as determined using EPA Method 22, 40 C.F.R. Part 60, Appendix A.

136.    From at least the inspection dates identified in Paragraph 112 until Ovintiv takes corrective action, Ovintiv has operated and on information and belief continues to operate the Elmer 1-7-3-1WH, Larsen 2-29-3-2WH, Lejeune 1-17-3-2WH, Morrill 4-23-3-2WH, Mullins 11-14-3-2W, Ranch 16-10-3-3-2WH, Ute Tribal 13-9-4-1E, Ute Tribal 5- 9-4-1E, and Ute Tribal 9-9-4-1E storage vessel affected facilities in violation of 40 C.F.R. § 60.5370(b) by failing to operate the air pollution control equipment for these facilities in a manner consistent with good air pollution control practice for minimizing emissions.

137.    Each of the violations alleged in Paragraphs 131 through 136 are violations of Section 111 of the Act, 42 U.S.C. § 7411(e).

138.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b) and 40 C.F.R. § 19.4, Ovintiv is liable for civil penalties of up to $121,275 per day for each violation alleged in this Claim 1 that occurred after November 2, 2015.

139.    Pursuant to Section 19-2-115 of the Utah Act, Utah Code Ann. § 19-2-115(2)(a), Ovintiv is liable for civil penalties of up to $10,000 per day for each violation alleged in this Claim 1.

## Claim 2

### Violations of NSPS Subpart OOOOa on Utah State Lands

140.    Paragraphs 1 through 127 are incorporated herein by reference.

141.    Paragraphs 140 through 148 are alleged jointly by the United States and the State of Utah.

142.    The Bar F 1-20-3-2 and Murray 2-17-3-2 Subpart OOOOa storage vessel affected facilities are located on Utah State lands.

143.    From at least the inspection dates identified in Paragraph 112 until Ovintiv takes

corrective action, Ovintiv has operated and on information and belief continues to operate the Bar F 1-20-3-2 and Murray 2-17-3-2 storage vessel affected facilities in violation of 40 C.F.R. § 60.5411a(b) by failing to ensure the covers and/or openings on the covers (e.g., access hatches and pressure relief valves) form a continuous impermeable barrier over the entire surface area of the liquid in the storage vessel, as required by 40 C.F.R. § 60.5411a(b)(1), failing to secure the storage vessel cover openings in a closed, sealed position, as required by 40 C.F.R. § 60.5411a(b)(2), and/or failing to maintain and operate the storage vessel thief hatches to ensure that the lid remains properly seated and sealed under normal operating conditions, including such times when working, standing/breathing, and flash emissions are generated, as required by 40 C.F.R. § 60.5411a(b)(3).

144.    From at least the inspection dates identified in Paragraph 112 until Ovintiv takes corrective action, Ovintiv has operated and on information and belief continues to operate the Bar F 1-20-3-2 and Murray 2-17-3-2 facilities in violation of 40 C.F.R. § 60.5395a(b)(1) by failing to equip the storage vessel with a cover that meets the requirements of § 60.5411a(b), failing to operate a closed vent system that meets the requirements of § 60.5411a(c) and (d), and failing to route emissions from the Bar F 1-20-3-2 and Murray 2-17-3-2 facilities to a control device that meets the conditions specified in § 60.5412a(c) or (d).

145.    From at least the inspection dates identified in Paragraph 112 above until Ovintiv takes corrective action, Ovintiv has operated and on information and belief continues to operate the Bar F 1-20-3-2 and Murray 2-17-3-2 facilities in violation of 40 C.F.R. § 60.5370a(b) by failing to maintain and operate its storage vessel affected facilities and associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions.

146.     Each of the violations alleged in Paragraphs 143 through 145 are violations of Section 111 of the Act, 42 U.S.C. § 7411(e).

147.     Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b) and 40 C.F.R. § 19.4, Ovintiv is liable for civil penalties of up to $121,275 per day for each violation alleged in this Claim 2 that occurred after November 2, 2015.

148.     Pursuant to Section 19-2-115 of the Utah Act, Utah Code Ann. § 19-2-115(2)(a), Ovintiv is liable for civil penalties of up to $10,000 per day for each violation alleged in this Claim 2.

## Claim 3

### Violations of State of Utah Approval Orders

149.     Paragraphs 1 through 127 are incorporated herein by reference.

150.     Paragraphs 149 through 158 are alleged jointly by the United States and the State of Utah.

151.     From at least the inspection dates identified in Paragraph 112 until the date corrective action was implemented, Ovintiv violated and on information and belief continues to violate Condition I.5 of the AOs issued for the Bar F 1-20-3-2, Elmer 1-7-3-1WH, Lejeune 1-17-3-2WH, Mullins 11-14-3-2W, Ranch 16-10-3-3-2WH, Ute Tribal 11-10-4-1E, Ute Tribal 13-9-4-1E, Ute Tribal 3-10-4-1E, Ute Tribal 5-9-4-1E, and Ute Tribal 9-9-4-1E facilities by failing to operate equipment approved under an AO (oil storage tanks, produced water storage tanks, or overflow tanks), including associated air pollution control equipment, in a manner consistent with good air pollution control practice for minimizing emissions at all times, including startup, shutdown, and malfunction to the extent practicable.

152.     From at least the inspection dates identified in Paragraph 112 until the date corrective action was implemented, Ovintiv violated Condition I.5 of the AO issued for GMBU

2-36-8-15H facility by failing to operate equipment approved under an AO (oil storage tanks, produced water storage tanks, or overflow tanks), including associated air pollution control equipment, in a manner consistent with good air pollution control practice for minimizing emissions at all times, including startup, shutdown, and malfunction to the extent practicable.

153.     From at least the dates of inspection listed in Paragraph 112, above, until the date the corrective action was implemented, Ovintiv violated and on information and belief continues to violate Conditions II.B.2.c of the AOs issued for the Lejeune 1-17-3-2WH, Mullins 11-14-3-2W, Ranch 16-10-3-3-2WH, Ute Tribal 13-9-4-1E, and Ute Tribal 5-9-4-1E facilities by failing to keep storage tank thief hatches closed and latched or sealed except during tank unloading or other maintenance activities.

154.     From at least the dates of inspection listed in Paragraph 112, above, until the date the corrective action was implemented, Ovintiv violated and on information and belief continues to violate Conditions II.B.2.c or II.B.4.c of the AOs issued for the Bar F 1-20-3-2 and Elmer 1-7-3-1WH facilities by failing to keep storage tank thief hatches and other tank openings closed and sealed except during tank unloading or other maintenance activities.

155.     From at least the dates of inspection listed in Paragraph 112, above, until the date the corrective action was implemented, Ovintiv violated and on information and belief continues to violate Conditions II.B.2.b, II.B.3.a, or II.B.4.b of the AOs issued for the Bar F 1-20-3-2, Elmer 1-7-3-1WH, Lejeune 1-17-3-2WH, Mullins 11-14-3-2W, Ranch 16-10-3-3-2WH, Ute Tribal 11-10-4-1E, Ute Tribal 13-9-4-1E, and Ute Tribal 9-9-4-1E facilities by failing to route all gases, vapors, and fumes from oil storage tanks and produced water storage tanks to an operating combustor at all times after production startup.

156.     From at least the dates of inspection listed in Paragraph 112, above, until the date

the corrective action was implemented, Ovintiv violated and on information and belief continues to violate Conditions II.B.2.b and II.B.2.b.1 of the AO issued for the Elmer 1-7-3-1WH facility by failing to operate each combustor with no visible emissions, as determined according to EPA Method 22.

157.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b) and 40 C.F.R. § 19.4, Ovintiv is liable for civil penalties of up to $121,275 per day for each violation alleged in this Claim 3 that occurred after November 2, 2015.

158.    Pursuant to Section 19-2-115 of the Utah Act, Utah Code Ann. § 19-2-115(2)(a), Ovintiv is liable for civil penalties of up to $10,000 per day for each violation alleged in this Claim 3.

## Claim 4

### Violations of NSPS Subpart OOOOa in Indian Country

159.    Paragraphs 1 through 127 are incorporated herein by reference.

160.    Paragraphs 159 through 169 are alleged solely by the United States because these facilities are located within Indian Country.

161.    The Keller 13-23-3-3W, McKinnon 14-22-3-3, Murray 2-17-3-2, Oats 2-26-3-3, Thorne 4-21-3-2WH, and Toponotes 13-22-3-3H OOOOa storage vessel affected facilities are located on the Uintah and Ouray Reservation.

162.    From at least the inspection dates identified in Paragraph 112 until Ovintiv takes corrective action, Ovintiv has operated and on information and belief continues to operate the Keller 13-23-3-3W, McKinnon 14-22-3-3, Oats 2-26-3-3, and Thorne 4-21-3-2WH storage vessel affected facilities in violation of 40 C.F.R. § 60.5411a(b) by failing to ensure the covers and/or openings on the covers (e.g., access hatches and pressure relief valves) form a continuous impermeable barrier over the entire surface area of the liquid in the storage vessel, as required by

40 C.F.R. § 60.5411a(b)(1), failing to secure the storage vessel cover openings in a closed, sealed position, as required by 40 C.F.R. § 60.5411a(b)(2), and/or failing to maintain and operate the storage vessel thief hatches to ensure that the lid remains property seated and sealed under normal operating conditions, including such times when working, standing/breathing, and flash emissions are generated, as required by 40 C.F.R. § 60.5411a(b)(3).

163.    From at least the inspection dates identified in Paragraph 112 until the date Ovintiv takes corrective action, Ovintiv has operated and on information and belief continues to operate the Keller 13-23-3-3W , McKinnon 14-22-3-3, Oats 2-26-3-3, Thorne 4-21-3-2WH facilities in violation of the storage vessel closed vent system requirements of 40 C.F.R. § 60.5411a(c) by failing to design the closed vent systems to route all gases, vapors, and fumes emitted from the material in the storage vessels to a control device that meets the requirements specified in 40 C.F.R. § 60.5412a (d), or to a process, as required by 40 C.F.R. § 60.5411a(c)(1), and failing to design and operate the closed vent systems with no detectable emissions as determined using olfactory, visual, and auditory inspections, as required by 40 C.F.R. § 60.5411a(c)(2).

164.    By failing to operate the Keller 13-23-3-3W 3, McKinnon 14-22-3-3, Oats 2-26-3-3, Thorne 4-21-3-2WH storage vessel affected facilities in compliance with the storage vessel closed vent system requirements of 40 C.F.R. § 60.5411a(b), Ovintiv violated the VOC standards for storage vessel affected facilities set forth at 40 C.F.R. § 60.5395a(b)(1).

165.    From at least the date of inspection identified in Paragraph 112 until Ovintiv takes corrective action, Ovintiv has operated and on information and belief continues to operate the Oats 2-26-3-3 storage vessel affected facility in violation of the control device requirements for storage vessel affected facilities set forth in 40 C.F.R. §§ 60.5412a(d)(1)(ii) or 60.5413a(e)(2),

by failing to operate a continuous burning pilot flames in the associated combustor.

166.    From at least the dates of inspection listed in Paragraph 112 until Ovintiv takes corrective action, Ovintiv has operated and on information and belief continues to operate the Keller 13-23-3-3W, McKinnon 14-22-3-3, and Thorne 4-21-3-2WH storage vessel affected facilities in violation of the storage vessel control device requirements at 40 C.F.R. § 60.5412a(d)(1)(iii) or the continuous compliance requirement for combustion control devices tested by the manufacturer at 40 C.F.R. § 60.5413a(e)(3) by failing to operate the control device without visible emissions as determined by Method 22 for a period exceeding one minute in a 15-minute period.

167.    From at least the inspection dates identified in Paragraph 112 until the date Ovintiv takes corrective action, Ovintiv has operated and on information and belief continues to operate the Keller 13-23-3-3W, McKinnon 14-22-3-3, Oats 2-26-3-3, Thorne 4-21-3-2WH, and Toponotes 13-22-3-3H storage vessel affected facilities in violation of  40 C.F.R. § 60.5370a(b) by failing to maintain and operate the facilities and associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions.

168.    Each of the violations alleged in Paragraphs 160 through 166 are violations of Section 111 of the Act, 42 U.S.C. § 7411(e).

169.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b) and 40 C.F.R. § 19.4, Ovintiv is liable for civil penalties of up to $121,275 per day for each violation alleged in this Claim 4 that occurred after November 2, 2015.

## Claim 5

### Violations of Utah Air Quality Regulations for the Oil and Gas Industry

170.    Paragraphs 1 through 127 are incorporated herein by reference.

171.    Paragraphs 170 through 176 are alleged solely by the State of Utah because they solely address violations of state regulations.

172.    The following facilities are subject to Utah air quality regulations for the oil and gas industry in Utah Administrative Code R307-501-1 through R307-501-4: Bar F 1-20-3-2, Bruce 2-14-3-2, Elmer 1-7-3-1WH, GMBU 2-36-8-15H, Larsen 2-29-3-2WH, Lejeune 1-17-3-2WH, Morrill 4-23-3-2WH, Mullins 11-14-3-2W, Murray 2-17 3-2, Ranch 16-10-3-3-2WH, Ute Tribal 11-10-4-1E, Ute Tribal 13-9-4-1E, Ute Tribal 3-10-4-1E, Ute Tribal 5-9-4-1E, and Ute Tribal 9-9-4-1E.

173.    From at least the dates of inspection identified in Paragraph 112 until the date corrective actions were completed, Ovintiv violated and on information and belief continues to violate Utah Administrative Code R307-501-4(1)(a) at the Bar F 1-20-3-2, Bruce 2-14-3-2, Elmer 1-7-3-1WH, Larsen 2-29-3-2WH, Lejeune 1-17-3-2WH, Morrill 4-23-3-2WH, Mullins 11-14-3-2W, Murray 2-17 3-2, Ranch 16-10-3-3-2WH, Ute Tribal 11-10-4-1E, Ute Tribal 13-9-4-1E, Ute Tribal 3-10-4-1E, Ute Tribal 5-9-4-1E, and Ute Tribal 9-9-4-1E facilities by failing to by failing to minimize emissions of VOC to the atmosphere to the extent reasonably practicable.

174.    From at least the dates of inspection identified in Paragraph 112 until the date corrective actions were completed, Ovintiv violated and on information and belief continues to violate Utah Administrative Code R307-501-4(1)(b) at the Bar F 1-20-3-2, Bruce 2-14-3-2, Elmer 1-7-3-1WH, Larsen 2-29-3-2WH, Lejeune 1-17-3-2WH, Morrill 4-23-3-2WH, Mullins 11-14-3-2W, Murray 2-17 3-2, Ranch 16-10-3-3-2WH, Ute Tribal 11-10-4-1E, Ute Tribal 13-9-4-1E, Ute Tribal 3-10-4-1E, Ute Tribal 5-9-4-1E, Ute Tribal 9-9-4-1E facilities by failing to maintain and operate the installation (including storage vessels or overflow tanks) or air pollution control equipment in a manner consistent with good air pollution control practices for

minimizing emissions at all times, including periods of startup, shutdown, and malfunction.

175.    From at least the identified in Paragraph 112 until the date corrective actions were completed, Ovintiv violated and on information and belief continues to violate Utah Administrative Code R307-501-4(2)(a) at the Bruce 2-14-3-2 facility by failing to operate and maintain air pollution control equipment pursuant to manufacturing specifications or equivalent to the extent practicable and consistent with technological limitations and good engineering and maintenance practices.

176.    From at least the dates of inspection identified in Paragraph 112 until the date corrective actions were completed, Ovintiv violated Utah Administrative Code R307-501-4(1)(b) at GMBU 2-36-8-15H, by failing to maintain and operate the installation (including storage vessels or overflow tanks) or air pollution control equipment in a manner consistent with good air pollution control practices for minimizing emissions at all times, including periods of startup, shutdown, and malfunction.

177.    Pursuant to Section 19-21-15 of the Utah Act, Utah Code Ann. § 19-2-115(2)(a), Ovintiv is liable for civil penalties of up to $10,000 per day for each violation alleged in this Claim 5.

## Claim 6

### Violations of Utah PBR

178.    Paragraphs 1 through 127 are incorporated herein by reference.

179.    Paragraphs 178 through 184 are alleged solely by the State of Utah because they solely address violations of state regulations.

180.    The following facilities are subject to Utah PBR regulations in Utah Administrative Code R307-506 through R307-510: Morrill 4-23-3-2WH, Murray 2-17 3-2, Bruce 2-14-3-2, and Larsen 2-29-3-2WH. The State of Utah and EPA inspected these facilities

on the dates specified in Paragraph 112.

181.    From at least the dates of inspection identified in Paragraph 112 until the date corrective actions were completed, Ovintiv violated and on information and belief continues to violate Utah Administrative Code R307-506-4(1) at the Morrill 4-23-3-2WH and Murray 2-17 3-2 facilities by failing to keep thief hatches closed and latched except during vessel unloading or other maintenance activities.

182.    From at least the dates of inspection identified in Paragraph 112 until the date corrective actions were completed, Ovintiv violated or continues to violate Utah Administrative Code R307-506-4(2) at the Bruce 2-14-3-2 and Murray 2-17 3-2 facilities by failing to route VOC emissions from storage vessels to a process unit or a VOC control device.

183.    From at least the dates of inspection identified in Paragraph 112 until the date corrective actions were completed, Ovintiv violated and on information and belief continues to violate Utah Administrative Code R307-508-3(1)(a) at the Bruce 2-14-3-2 facility by failing to operate the control device with no visible emissions.

184.    Pursuant to Section 19-2-115 of the Utah Act, Utah Code Ann. § 19-2-115(2)(a), Ovintiv is liable for civil penalties of up to $10,000 per day for each violation alleged in this Claim 6.

## PRAYER FOR RELIEF

WHEREFORE, the United States and the State of Utah request that this Court:

1.    Assess civil penalties against Ovintiv of up to $121,275 per day for each violation occurring for violations alleged jointly by the United States and the State of Utah and violations alleged solely by the United States;

2.    Assess civil penalties against Ovintiv of up to $10,000 per day for each violation alleged solely by the State of Utah;

3.      Award any other appropriate relief in accordance with the Act at Section 113(b),

42 U.S.C. § 7413(b) and the Utah Act at Section 19-2-115, Utah Code Ann. § 19-2-115; and

4.      Grant such other relief as the Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES

Todd Kim
Assistant Attorney General
Environment and Natural Resources
Division
U.S. Department of Justice

JAMES D. FREEMAN
Environmental Enforcement Section
U.S. Department of Justice

Attorneys for Plaintiff United States of America

FOR THE STATE OF UTAH
SEAN D. REYES
Utah Attorney General

MARINA V. THOMAS
Utah Assistant Attorney General
Utah Attorney General's Office
Environment, Health & Human Services Division

Attorneys for Plaintiff State of Utah