IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA; and STATE OF UTAH, <br><br> Plaintiffs, <br><br> v. <br><br> FOURPOINT RESOURCES, LLC, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER <br><br> Case No. 2:24-cv-00723-RJS-DBP <br><br> Chief Judge Robert J. Shelby <br><br> Chief Magistrate Judge Dustin B. Pead |

Now before the court is non-party the Ute Indian Tribe of the Uintah and Ouray Reservation (the Tribe)'s Motion to Intervene under Federal Rule of Civil Procedure 24.[1] For the reasons explained below, the court DENIES the Tribe's Motion.

## BACKGROUND[2]

### I. The Memorandum of Agreement

On April 12, 2023, the U.S. Environmental Protection Agency Region 8 (EPA) and the Tribe entered into a Memorandum of Agreement related to the EPA's "civil compliance monitoring activities" on the Uintah and Ouray Reservation.[3] The Agreement provides that "[t]he EPA will consult with the Tribe prior to a decision to refer a civil enforcement case involving violations in Indian country on [the Reservation] to the Department of Justice."[4] In addition, the Agreement states the EPA will "give meaningful consideration to and prioritize" the

---

[1] Dkt. 16, *Motion to Intervene and Memorandum of Law in Support* (*Motion to Intervene*).

[2] On a motion to intervene, the court accepts as true the proposed intervenor's well-pleaded factual allegations. *See Illinois v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 82 (2019).

[3] Dkt. 8, *Attachments 1-21* at Attachment 3 (*Agreement*).

[4] *Id.* ¶ 7.

Tribe's preferred remedies in "civil administrative enforcement action[s]" for violations occurring on the Reservation.[5] But the Agreement contains a clause stating it "is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity against either of the Parties, their departments, officers, employees, agents, or any other person."[6]

## II.   The Consent Decree

Plaintiffs United States of America and the State of Utah brought this action against Defendant Ovintiv USA, Inc. on September 30, 2024, alleging violations of the Clean Air Act (CAA) and Utah Air Conservation Act.[7] That same day, Plaintiffs lodged a proposed Consent Decree resolving their claims.[8] The Consent Decree required Defendant to pay a $5,500,000 civil penalty, split evenly by Plaintiffs.[9] It also obligated Defendant to take certain actions ensuring its facilities, many of which are located on the Reservation, comply with applicable state and federal law.[10] Plaintiffs gave notice of the proposed Consent Decree in the Federal Register and invited public comment.[11] The only comment received was from the Tribe.[12] Plaintiffs then moved the court to enter a revised Consent Decree on December 23, 2024.[13] After considering the Motion to Enter the Consent Decree and the Tribe's comment, and finding

---

[5] *Id.*

[6] *Id.* ¶ 9.

[7] Dkt. 2, *Complaint*.

[8] Dkt. 3, *Notice of Lodging Consent Decree.*

[9] Dkt. 15, *Consent Decree* ¶¶ 36–38.

[10] *Id.* ¶¶ 12–35.

[11] Dkt. 4, *United States' and the State of Utah's Unopposed Motion to Enter Consent Decree* (*Motion to Enter Consent Decree*) at 2.

[12] *Id.* (citing Dkt. 4-2, *Ute Indian Tribe of the Uintah and Ouray Reservation Comments on the Consent Decree Between the Environmental Protection Agency and Ovintiv USA, Inc.*).

[13] *See generally id.*

the proposed Consent Decree fair, reasonable, adequate, and lawful, the court entered the Consent Decree as its final Judgment on January 8, 2025.[14]

Six days later, the Tribe filed its Motion to Intervene,[15] which is fully briefed.[16] The Tribe seeks intervention to (1) bring a claim for "unlawful inaction under the APA" against the United States and (2) move the court to set aside the Consent Decree under Federal Rule of Civil Procedure 60(b).[17] It alleges the EPA violated the Agreement by failing to engage in government-to-government consultations with the Tribe related to the enforcement action against Defendant.[18] The court deferred consideration of the Motion to Intervene and ordered supplemental briefing on whether the Tribe has adequately established Article III standing.[19] Having received and considered the parties' supplemental briefing,[20] the court now addresses this question.

## LEGAL STANDARD

"The standing requirement is an 'irreducible constitutional minimum' that 'serves to identify those disputes which are appropriately resolved through the judicial process.'"[21] "For

---

[14] Dkt. 14, *Order Granting Plaintiffs' Unopposed Motion to Enter Consent Decree*. The court substituted Defendant FourPoint Resources, Inc. for Ovintiv after FourPoint acquired all assets subject to the Consent Decree. Dkt. 37, *Order*.

[15] *Motion to Intervene*.

[16] Dkt. 31, *Plaintiffs' Opposition to the Ute Tribe's Motion to Intervene*; Dkt. 33, *Reply in Support Motion to Intervene*.

[17] *See Motion to Intervene* at 1–2; Dkt. 16-2, *Ute Indian Tribe's Pleading in Intervention Under Federal Rule of Civil Procedure 24(c)* (*Pleading in Intervention*) at 14, 16 (citation modified).

[18] *See Pleading in Intervention* at 7–11.

[19] Dkt. 35, *Order*.

[20] *See* Dkt. 42, *Ute Indian Tribe's Brief on Standing Pursuant to April 17, 2025, Court Order* (*Tribe's Standing Brief*); Dkt. 43, *Plaintiffs' Response to Ute Indian Tribe's Brief on Standing* (*Plaintiffs' Standing Brief*); Dkt. 44, *Ute Indian Tribe's Reply Brief on Standing Pursuant to April 17, 2025, Court Order* (*Tribe's Standing Reply*).

[21] *Speech First, Inc. v. Shrum*, 92 F.4th 947, 949 (10th Cir. 2024) (citation modified) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

all relief sought, there must be a litigant with standing," such that a proposed intervenor seeking relief "different from that which is sought by a party with standing" bears the burden of establishing its own Article III standing.[22] To establish standing, a litigant must prove (1) he has suffered an injury in fact (2) "fairly traceable to the challenged conduct" that (3) a favorable judicial decision is likely to redress.[23] "[E]ach element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation."[24]

## ANALYSIS

As a threshold matter, the Tribe seeks relief "different from that which is sought" by any party in the litigation, so the Tribe must establish standing.[25] Consistent with this finding, the court directed the parties to file supplemental briefing addressing two elements of the standing inquiry: whether the Tribe has adequately alleged an injury and, if so, whether that injury is redressable by the court.[26] For the reasons explained below, the court finds the Tribe has failed to establish an injury.

A litigant "must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical" to

---

[22] *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439–40 (2017) (intervenors as of right); *see also Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 912–13 (10th Cir. 2017) ("Article III's requirements apply to *all* intervenors, whether they intervene to assert a claim or defend an interest." (citations omitted)); *United States v. RaPower-3, LLC*, 341 F.R.D. 311, 316–17 (D. Utah 2022) (collecting cases finding that prospective intervenors seeking to permissively intervene must establish Article III standing); *Lujan*, 504 U.S. at 561 (burden of proof).

[23] *See Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1160 (10th Cir. 2023) (quoting *Carney v. Adams*, 592 U.S. 53, 58 (2020)).

[24] *Lujan*, 504 U.S. at 561 (citations omitted).

[25] *Town of Chester*, 581 U.S. at 440. Plaintiffs initially sought assessment of civil penalties against Defendant under the CAA and then sought entry of the Consent Decree. *See Complaint* at 43–44; *Motion to Enter Consent Decree*. Defendant assented to entry of the Consent Decree and did not pursue any claims. *Motion to Enter Consent Decree* at 2 ("All parties support the entry of the Consent Decree."). As the court previously stated, the Tribe seeks intervention to (1) bring a claim for "unlawful inaction under the APA" against the United States and (2) move the court to set aside the Consent Decree under Federal Rule of Civil Procedure 60(b). *See Motion to Intervene* at 1–2; *Pleading in Intervention* at 14, 16.

[26] Dkt. 35, *Order*.

establish injury in fact.[27] While violation of a "procedural right" afforded to a party to protect its "concrete interests" may be sufficient to establish injury,[28] a "bare procedural violation[], divorced from any concrete harm" is not.[29]

The Tribe argues it has suffered injury from (1) invasion of its sovereignty and (2) direct economic harm.[30] The court addresses each theory in turn.

## I. Invasion of Sovereignty

Before considering the Tribe's theories of injury related to its sovereignty, the court first addresses its arguments concerning the EPA's alleged violation of the Agreement. The Tribe argues it suffered injury to its sovereignty when the EPA allegedly violated the Agreement by failing to engage in government-to-government consultations with the Tribe related to the enforcement action against Defendant.[31] In response, Plaintiffs argue the Agreement "does not create any enforceable rights," rendering any violation a "bare procedural injury" that cannot

---

[27] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citation modified).

[28] *New Mexico v. Dep't of Interior*, 854 F.3d 1207, 1215 (10th Cir. 2017) (citations omitted).

[29] *TransUnion LLC v. Ramirez*, 594 U.S. 413, 440 (2021) (citation modified).

[30] *See Tribe's Standing Brief* at 4–8. The Tribe at times suggests it suffered additional injuries, such as when it argues the United States failed to "uphold its trust responsibility" by not engaging in consultations with the Tribe or failed to prioritize remedies identified by the Tribe when pursuing enforcement actions but does not develop its arguments related to these potential injuries. *See id.* at 3, 6, 9. A failure to offer legal support constitutes waiver. *See Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1232 (10th Cir. 2003). But even had the Tribe not waived them, the arguments fail on the merits. A failure to consult does not violate the government's trust responsibility to the Tribe in the absence of "a treaty, statute, or regulation" requiring such consultation. *See Plaintiffs' Standing Brief* at 4–5 (first citing *Morongo Band of Mission Indians v. FAA*, 161 F.3d 569, 574 (9th Cir. 1998) ("[U]nless there is a specific duty that has been placed on the government with respect to Indians, [the trust] responsibility is discharged by the agency's compliance with general regulations and statutes not specifically aimed at protecting Indian tribes."); and then citing *Arizona v. Navajo Nation*, 599 U.S. 555, 565–66 (2023) ("[U]nless Congress has created a conventional trust relationship with a tribe as to a particular trust asset, this Court will not 'apply common-law trust principles' to infer duties not found in the text of a treaty, statute, or regulation.")). As such, the trust responsibility does not independently create a duty to consult, and any failure to consult cannot constitute injury absent "a treaty, statute, or regulation" requiring it. In addition, the Agreement's prioritization clause refers only to "civil *administrative* enforcement action[s]." *Agreement* ¶ 7 (emphasis added). Because the Agreement is silent as to whether the EPA must prioritize the Tribe's favored remedies in a federal court enforcement action, a failure to do so is not a cognizable injury.

[31] *See Tribe's Standing Brief* at 4–6 (sovereign interests); *id.* at 6–7 (quasi-sovereign interests).

confer standing.[32]  In Reply, the Tribe contends "a litigant 'need show only that compliance with the procedural requirements *could* have better protected its concrete interests.'"[33]

The court agrees with Plaintiffs for two reasons.  First, the Agreement explicitly and unambiguously disclaims the creation of any substantive or procedural rights: "This Agreement is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity against either of the Parties, their departments, officers, employees, agents, or any other person."[34]  Such a clause strips a litigant of standing.[35]  Second, even assuming the Agreement conferred onto the Tribe a procedural right to consultation with the EPA, one cannot suffer a procedural injury unless "the procedures in question are designed to protect some threatened concrete interest of the party that is the ultimate basis of its standing."[36]  As the court explains below, there is no sufficiently "concrete interest" threatened by the EPA's alleged violation of the Agreement.  Thus, violation of the Agreement is insufficient to confer standing on the Tribe and when considering whether the Tribe has suffered an injury, the court must look elsewhere.

---

[32] *Plaintiffs' Standing Brief* at 4–6.

[33] *Tribe's Standing Reply* at 5 (quoting *New Mexico*, 854 F.3d at 1215).

[34] *Agreement* ¶ 9.  The Tribe's arguments as to the import of the Agreement have evolved since the Tribe initially sought intervention.  In its Motion to Intervene, the Tribe argues it "seeks government intervention based on Executive Order 13175 and the [Agreement] made under that Order."  *Motion to Intervene* at 11.  Then, in its initial supplemental brief addressing standing, the Tribe posits it "has alleged an invasion of its sovereign interests *primarily* through its discussion of EPA's violation of the [Agreement] with the Tribe."  *Tribe's Standing Brief* at 5 (emphasis added).  But in Reply, the Tribe argues "[t]he United States' failure to adhere to the [Agreement] is significant to the Tribe's legal challenge to the Consent Decree only insofar as the [Agreement] embodies existing federal law and policy."  *Tribe's Standing Reply* at 4.  As explained below, the Tribe's reliance on Executive Order 13175 and "existing federal law and policy" is unavailing.  *See infra* § I(A).

[35] *See Idaho Sporting Cong., Inc. v. U.S. Forest Serv.*, 92 F.3d 922, 927 (9th Cir. 1996) (holding the alleged violation of a nonenforcement clause similar to the one in the Agreement is insufficient to establish standing).  The Tribe argues "the United States repeatedly asserts that the Tribe has no cause of action under the [Agreement] . . . because of language in the [Agreement] stating that its terms do not independently create a legal cause of action."  *Tribe's Standing Reply* at 4.  But Plaintiffs do not make that argument; they argue the Agreement does not create any enforceable rights.  *See Plaintiffs' Standing Brief* at 4, 9.

[36] *New Mexico*, 854 F.3d at 1215 (citation modified) (quoting *Lujan*, 504 U.S. at 573 n.8).

### A. Invasion of Sovereign Interests

The Tribe argues the United States has wrongfully invaded the Tribe's "exercise of its sovereign authority" "primarily" by violating the Agreement.[37] Relying on *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*[38] and *Utah Division of Consumer Protection v. Stevens*,[39] the Tribe contends the alleged violation constitutes an invasion of the Tribe's "legally protected interest[]" in its sovereignty.[40] While the Tribe notes these cases concern the sovereign interests of States, it argues the Tenth Circuit has described Indian tribes as "sovereign political entities possessed of sovereign authority not derived from the United States, which they predate,"[41] suggesting the Tribe has an "even more compelling case" it suffered an injury.[42]

In response, Plaintiffs argue their actions do not implicate the Tribe's sovereign authority.[43] They explain that the Supreme Court in *Alfred L. Snapp* articulated two sovereign interests: (1) "the power to create and enforce a legal code," and (2) "the demand for recognition from other sovereigns, like the maintenance and recognition of borders."[44] According to Plaintiffs, even assuming the EPA failed to consult with the Tribe, such a failure "does not

---

[37] *Tribe's Standing Brief* at 4–6.  In Reply, the Tribe argues the United States disregarded "federal law and policy" in addition to the Agreement in support of its argument related to the alleged invasion of its sovereign interests. *Tribe's Standing Reply* at 7.  But the Tribe does not elaborate on the federal law the United States has allegedly violated.  *See id.*  To the extent the Tribe relies on Executive Order 13175—which it mentions in its Motion to Intervene but omits entirely from its supplemental briefing—the court finds that Order suffers from the same deficiency as the Agreement, namely that it contains a nonenforcement clause.  *See* Exec. Order 13175, *Consultation and Coordination with Indian Tribal Governments*, 65 Fed. Reg. 67249, 67252 (Nov. 6, 2000) ("*Judicial Review*.  This order is intended only to improve the internal management of the executive branch, and is not intended to create any right, benefit, or trust responsibility, substantive or procedural, enforceable at law by a party against the United States, its agencies, or any person.").

[38] 458 U.S. 592 (1982).

[39] 398 F. Supp. 3d 1139 (D. Utah 2019).

[40] *Tribe's Standing Brief* at 4–6.

[41] *Id.* at 5 (quoting *NLRB. v. Pueblo of San Juan*, 276 F.3d 1186, 1192 (10th Cir. 2002)).

[42] *Id.*

[43] *Plaintiffs' Standing Brief* at 6.

[44] *Id.* (quoting *Alfred L. Snapp*, 458 U.S. at 601).

prevent the Tribe from taking action against [Defendant] or otherwise enforcing tribal law" nor does it "dispute or in any way question tribal borders."[45] Plaintiffs contend the Tribe has thus suffered no injury to its sovereign interests stemming from the EPA's alleged failure to consult with the Tribe concerning the enforcement action against Defendant.

The court agrees with Plaintiffs. First, *Alfred L. Snapp*[46] and *Stevens*[47] involve the sovereign interests of States, not Indian tribes. Second, even assuming the court should extend these cases to apply to Indian tribes, the harm alleged by the Tribe—the United States' alleged failure "to allow the Tribe to . . . provide input on the Tribe's duly adopted priorities and objectives concerning environmental protection measures affecting its own lands"[48]—is different in kind from the sovereign interests delineated in *Alfred L. Snapp* and *Stevens*.[49] And the Supreme Court makes clear environmental concerns are more aptly considered quasi-sovereign

---

[45] *Id.* In Reply, the Tribe argues the United States is "disregarding duly adopted Tribal law" because the Tribal Business Committee adopted the Agreement into binding tribal law by enacting an ordinance. *Tribe's Standing Reply* at 7. The court cannot accept this argument for two reasons. First, the Tribe waived the argument because it raises it for the first time in a reply. *See In re Motor Fuel Temperature Sales Pracs. Litig.*, 872 F.3d 1094, 1112 n.5 (10th Cir. 2017). Second, *Alfred L. Snapp* discusses the "power to create and enforce a legal code" in the context of exercising it "over individuals and entities within the relevant jurisdiction." 458 U.S. at 601. The Tribe may not enforce tribal law against the United States because "tribes are subject to plenary control by Congress." *Ute Indian Tribe v. Lawrence*, 875 F.3d 539, 542 (10th Cir. 2017) (quoting *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014)). In other words, the Tribe cannot unilaterally enforce an unenforceable document (the Agreement) against the United States by simply enacting a tribal ordinance.

[46] 458 U.S. at 601.

[47] 398 F. Supp. 3d at 1143–44.

[48] *Tribe's Standing Reply* at 6–7. In Reply, the Tribe attempts to argue its sovereign interests are not limited to the two interests listed by the Court. *Id.* But it failed to make this argument in its initial brief, so it is waived. *See In re Motor Fuel*, 872 F.3d at 1112 n.5. Even assuming the Tribe did not waive the argument, the case it cites in support does not concern whether the Tribe has a sovereign interest in "provid[ing] input" on "environmental protection measures affecting its own lands." *See Tribe's Standing Reply* at 6–7 (citing *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 141 (1982) (holding a tribe derives from its sovereignty the "authority to tax non-Indians who conduct business on the reservation")).

[49] The court notes *Stevens* merely echoes the two sovereign interests discussed in *Alfred L. Snapp*. *See Stevens*, 398 F. Supp. 3d at 1143–44.

interests.[50] Accordingly, the court finds the Tribe has failed to establish standing by alleging an invasion of its sovereign interests.

### B. Invasion of Quasi-Sovereign Interests

"The doctrine of parens patriae refers to the right of a State to sue to prevent or repair harm to its 'quasi-sovereign' interests."[51] The Tribe argues it has alleged an injury "to its quasi-sovereign interest in upholding, protecting, and advancing the interests of its citizens" in its role as *parens patriae*.[52] This argument fails for two reasons. First, as before, the Tribe directs the court to cases involving States, not Indian Tribes.[53] Second, even assuming the court should extend these cases to apply to Indian tribes, the Supreme Court has explicitly held that "a State does not have standing as *parens patriae* to bring an action against the Federal Government."[54] This is dispositive. The Tribe seeks to bring a claim against the United States; binding case law prevents it from doing so in its capacity as *parens patriae*.

In Reply, the Tribe argues it may bring an action against the federal government in its capacity as *parens patriae* because "the Supremacy Clause and principles of federalism" do not define its relationship with the federal government like they do for States.[55] The court finds this

---

[50] *See Alfred L. Snapp*, 458 U.S. at 602–07 (quoting *Georgia v. Tennessee Copper Co.*, 206 U.S. 230, 237 (1907) ("[T]he state has an interest independent of and behind the titles of its citizens, in all the earth and air within its domain. It has the last word as to whether its mountains shall be stripped of their forests and its inhabitants shall breathe pure air.")).

[51] *Sierra Club v. Two Elk Generation Partners, Ltd. P'ship*, 646 F.3d 1258, 1268 (10th Cir. 2011) (citation modified).

[52] *Tribe's Standing Brief* at 6.

[53] *Id.* (first quoting *Alfred L. Snapp*, 458 U.S. at 601; and then quoting *Massachusetts v. EPA*, 549 U.S. 497, 518–19 (2007)).

[54] *Alfred L. Snapp*, 458 U.S. at 610 n.16 (citation modified).

[55] *See Tribe's Standing Reply* at 7–8.

proposition questionable.[56] Moreover, the Tribe cites *United States v. Wheeler*[57] for the proposition that "until Congress acts, the tribes retain their existing sovereign powers."[58] But here Congress *has* acted. The CAA permits the EPA to treat tribes as States for the purpose of enforcement.[59] The EPA promulgated the Tribal Authority Rule to carry out this responsibility, "under which qualified tribes may apply for authority to implement and manage programs for air quality in areas under tribal jurisdiction."[60] But until a tribe has applied for and obtained the necessary status under the Tribal Authority Rule, "the EPA is the primary enforcer of the CAA" on tribal land.[61] Here, the United States argues the Tribe has not yet sought or obtained status to enforce the CAA on the Reservation, so the EPA is entitled to enforce it there, not the Tribe.[62] The Tribe does not dispute this in Reply.[63]

The court therefore finds the Tribe has failed to establish injury to its quasi-sovereign interests.

## II. Direct Economic Harm

The Tribe next argues it has suffered direct economic harm in two ways: it has interests in (1) "ensuring that the Tribe derives meaningful benefit from the fees and penalties remitted by its industry partners for on-Reservation CAA violations" and (2) "reducing fees and penalties on

---

[56] *See, e.g.*, *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 175 (2011) ("Throughout the history of the Indian trust relationship, we have recognized that the organization and management of the trust is a sovereign function subject to the plenary authority of Congress." (citations omitted)).

[57] 435 U.S. 313, 323 (1978).

[58] *Tribe's Standing Reply* at 8 (citing *Wheeler*, 435 U.S. at 323).

[59] *Wyoming v. EPA*, 875 F.3d 505, 511 (10th Cir. 2017) (citing 42 U.S.C. § 7601(d)).

[60] *Id.* (citing 42 U.S.C. § 7601(d)(2)(B)).

[61] *United States v. Questar Gas Mgmt. Co.*, No. 2:08-cv-167-DAK, 2010 WL 5279832, at *5 (D. Utah Dec. 14, 2010).

[62] *Plaintiffs' Standing Brief* at 6 n.3.

[63] *See generally Tribe's Standing Reply*.

its industry partners that may hinder oil and gas production or make on-Reservation oil and gas production more costly for present and future operators."[64]

The Tribe's first argument fails because the Tribe acknowledges it is not entitled to any CAA penalties remitted to Plaintiffs under the Consent Decree.[65] Instead, it argues it should receive "meaningful benefit" from those penalties.[66] But this is a distinction without a difference. If the Tribe is not entitled to share in the CAA penalties, then the court is unclear why it would be entitled to receive "meaningful benefit" from those very same penalties. While the Tribe is correct that "a loss of even a small amount of money" ordinarily qualifies as an injury,[67] here the Tribe has demonstrated no legal right to *any* funds. The Tribe has therefore failed to establish an economic injury under this theory.[68]

As to the Tribe's second argument, the court finds the Tribe has failed to advance sufficient supporting legal authority. The Tribe appears to assert a theory of third-party standing regarding an alleged interest in reducing fees on its "industry partners,"[69] but it has not provided the court with argument for how that confers standing on the Tribe. A party may not "rest [its]

---

[64] *Tribe's Standing Brief* at 7 (citation omitted). Plaintiffs argue these injuries are "paradoxical[]." *Plaintiffs' Standing Brief* at 8. While true, a party may plead inconsistent facts and theories. *Cline v. Clinical Perfusion Sys., Inc.*, 92 F.4th 926, 935 (10th Cir. 2024) (citations omitted).

[65] *See Tribe's Standing Reply* at 8. Plaintiffs persuasively argue that the United States is prohibited from "entering into a settlement that shares the settlement proceeds with entities that have not asserted a claim against the settling defendant." *See Plaintiffs' Standing Brief* at 8–9 n.4 (first citing Miscellaneous Receipts Act, 31 U.S.C. § 3302(b); and then citing U.S. Env't Prot. Agency, *Joint Collection of Penalties with State and Local Governments and Federally Recognized Indian Tribes* (Mar. 11, 2005) ("The state, local or tribal government must have and assert an independent claim under federal, state or tribal law that supports its entitlement to civil penalties.")).

[66] *Tribe's Standing Brief* at 7.

[67] *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017).

[68] While the court did not ask the parties for briefing related to the causation element of standing, such an analysis is clearly relevant here. A party "can satisfy the 'fairly traceable' requirement by advancing allegations which, if proven, allow for the conclusion that the challenged conduct is a 'but for' cause of the injury." *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 814 (10th Cir. 2021). Where the Tribe is not legally entitled to receive funds as a result of the enforcement action against Defendant, no but-for causation exists.

[69] *Tribe's Standing Brief* at 7–8.

claim to relief on the legal rights or interests of third parties."[70]  And where a litigant "challenges the government's unlawful regulation (or lack of regulation) of *someone else*, standing is not precluded, but it is ordinarily substantially more difficult to establish."[71]  The court finds the Tribe has failed to meet this heightened showing because it has not demonstrated any legal interest in reducing fees on its "industry partners."  The Tribe has therefore failed to establish an injury under this theory of economic harm.

For the reasons explained above, the court finds the Tribe has not suffered an injury for the purpose of the standing analysis.

## CONCLUSION

Accordingly, the court finds the Tribe has failed to establish standing to intervene.  The court therefore DENIES the Tribe's Motion to Intervene.[72]

SO ORDERED this 1st day of August 2025.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[70] *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (citations omitted).

[71] *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024) (citation modified).

[72] Dkt. 16.